UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID CROZIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:17-cv-00035-DML-TWP |
| | ) |
| NANCY A. BERRYHILL, | ) |
| | ) |
| Defendant. | ) |

# Decision on Judicial Review

Mr. Crozier applied on January 21, 2013, for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, alleging that he has been disabled since January 1, 2011. Acting for the Commissioner of the Social Security Administration following a hearing on March 16, 2015, an administrative law judge (ALJ) found that Mr. Crozier is not disabled. The Appeals Council denied review of the ALJ's decision on November 1, 2016, rendering the ALJ's decision for the Commissioner final. Mr. Crozier timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision. For the reasons set forth below, this court REVERSES and REMANDS the Commissioner's decision.

## Standard for Proving Disability

To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423(d)(1)(A). Mr. Crozier is disabled if his impairments are of such severity that he is not able to perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration (SSA) has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is

a claimant's ability to do work on a regular and continuing basis despite his impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform his past relevant work, then he is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his age, work experience, and education (which are not considered at step four), and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence

3

in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## **The ALJ's Sequential Findings**

Mr. Crozier was born in 1953 and was 57 years old at the time of the alleged onset date. Mr. Crozier and a vocational expert testified at the hearing.

At step one, the ALJ determined that Mr. Crozier had not engaged in substantial gainful activity since January 1, 2011, the alleged onset date. At step two, the ALJ found Mr. Crozier had the following severe impairment: degenerative disc disease (spondylosis and stenosis at L4-L5). At step three, the ALJ concluded that Mr. Crozier did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (R. 44-46).

Considering his impairments, the ALJ determined Mr. Crozier has the RFC to perform light work as defined in the regulations, with the following limitations. Mr. Crozier can never climb ladders, ropes, and scaffolds, but he can frequently climb ramps and stairs. He can frequently balance, stoop, kneel, crouch, and crawl. He must avoid concentrated exposure to vibrations and hazards. (*Id.* at 46).

With this RFC and based on the ALJ's review of testimony of a vocational expert (VE), the ALJ found at step four that Mr. Crozier was able to perform his past relevant work as a production engineer. Therefore, the ALJ determined Mr. Crozier has not been under a disability from January 1, 2011, through the date of the ALJ's decision. (*Id.* at 49-50). Mr. Crozier now challenges this outcome.

4

## Analysis

Mr. Crozier argues the following errors necessitate remand: (1) the ALJ failed to articulate why Mr. Crozier's severe impairment did not meet or equal a listing and (2) the ALJ failed to account for all of the effects of Mr. Crozier's impairments when assessing the RFC, specifically the adverse effects of medication and headaches. The court will address each of these arguments in turn.

### A. The ALJ's step three decision was supported by substantial evidence.

Mr. Crozier's step three argument is without merit. At the hearing, counsel for Mr. Crozier – the same attorney representing Mr. Crozier in this appeal – told the ALJ his theory of the case was as follows:

> *He doesn't have the clinical findings that one would associate with meeting 104a or 104c.* But that kind of problem with radiculopathy and going into his leg is certainly consistent with a general limitation to at most light work. Even then, the ability to sustain light work, I think, would be questionable given what he's talked about today.

(R. 35) (emphasis added). Mr. Crozier's attorney ultimately maintained that Mr. Crozier should be given a sedentary RFC, at which point he would grid out. (*Id.*) But Mr. Crozier's argument to the Appeals Council with respect to Listing 1.04A, although characterized as a deficiency of the ALJ's listing analysis, was that the medical evidence shows that Mr. Crozier equals the listing. (R. 201). Here, a substantial portion of Mr. Crozier's step three argument is devoted to arguing that the criteria of Listing 1.04A *has* been met. (Br. at 15-17).

The problem for Mr. Crozier is that the ALJ agreed with his attorney regarding the clinical findings. At step three, the ALJ found as follows:

5

> As presented in further detail with the claimant's [RFC] assessment, the record does not contain clinical findings or test results that meet the level of severity required by any of the musculoskeletal system listings. In addition, no medical expert has mentioned findings that would equal the criteria for any of the listed impairments. The undersigned has specifically considered the requirements of listing 1.04 in making the finding that the severity of the claimant's impairment does not meet or equal a listing.

(R. 46).

True to his word, the ALJ discussed Mr. Crozier's medical records – including much of the evidence cited in Mr. Crozier's brief – in further detail in the RFC assessment. (R. 47-49). Ultimately, the ALJ concluded:

> The undersigned notes that the claimant's representative argued that the claimant's lumbar MRI, which showed nerve root impingement, would if capable of light work, necessitate the claimant needing the option to sit or stand at will, but such objective findings in his opinion should limit the claimant to a sedentary exertional capacity (Hearing Testimony). However, two medical doctors, after reviewing the claimant's medical records, came to the same conclusion regarding the claimant's capabilities of performing light work and neither opined that the claimant would need an option to sit or stand at will. Furthermore, as noted above, evidence received at the hearing level shows that the claimant was engaged in activities that are inconsistent with sedentary work, and the claimant's limited treatment support no worsening of the claimant's limitations since the State agency medical consultants rendered their opinions.

(*Id.* at 49). *Cf. Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) ("What is troubling is that the ALJ, in addition to not mentioning Listing 1.04A, did not evaluate any of the evidence on its required criteria that is favorable to [the claimant].").

The ALJ bears responsibility for deciding medical equivalence for cases at the ALJ level. 20 C.F.R. § 404.1526(e). While "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight" (SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996)), Disability Determination and Transmittal Forms "conclusively establish that 'consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.'" *Scheck*, 357 F.3d at 700 (internal citations omitted); *see also* SSR 96-6p, 1996 WL 374180, at *3. "Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review." SSR 96-6p, 1996 WL 374180, at *3.

As the ALJ explained in his opinion, the state agency medical consultants specifically considered Mr. Crozier's September 2012 lumbar MRI, his reduced range of motion in his lumbar spine, and his limped gait. (R. 49); *see also* R. 60, 70. However, they ultimately determined, as reflected in the DDT forms in the record, that Mr. Crozier was not disabled. *Cf. Wadsworth v. Astrue*, No. 1:07-cv-0832, 2008 WL 2857326, at *7 (S.D. Ind. July 21, 2008) ("Here, no medical advisor designated by the Commissioner has expressed an opinion as to whether [the claimant's] impairments equaled a listing.")

Mr. Crozier faults the state agency consultants' Disability Determination Explanations because they did not specifically mention "the findings of the impinged nerve root at L4," one treating physician's "findings regarding weakness and sensation loss," and a single positive straight leg test in March of 2013.[1] (Br. at 20). However, Mr. Crozier fails to identify how these omissions change the analysis regarding whether Mr. Crozier met or medically equaled a listing – especially when this medical evidence was before the state agency consultants and Mr. Crozier's own attorney admitted at the hearing that Mr. Crozier lacked the clinical evidence one would associate with Listing 1.04A. In addition, Mr. Crozier identifies only one medical record in support of this argument that post-dates the state agency consultants' review (*Id.* at 16), but he likewise fails to explain how that record would change the ALJ's step three analysis.

It is the claimant's burden to prove that his condition meets or equals a listed impairment. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). Although the ALJ "bear[s] some responsibility for developing the administrative record . . . [the ALJ is] also free to assume that a claimant represented by counsel has presented [his] strongest case for benefits . . . ." *Buckhanon v. Astrue*, 368 F. Appx. 674, 679 (7th Cir. 2010) (internal citations omitted). Mr. Crozier knew in 2013 that the state-agency consultants did not think he was disabled. Mr. Crozier, represented by counsel, never presented an opinion on whether he met or equaled a listing, nor did

---

[1] The only other straight leg test identified by Mr. Crozier predated the alleged onset date.

8

he ask the ALJ to recontact the state agency consultants. At the same time, however, Mr. Crozier was gathering other evidence for the record. In these circumstances, the appropriate inference is that Mr. Crozier decided another expert opinion would not help him. *Id.* (court could not conclude ALJ erred or "any putative error was harmful;" ALJ expressly relied on medical judgment of state agency consultants and claimant's medical providers remained silent on question of medical equivalence).

### B. **Remand is required because the ALJ failed to consider the adverse side effects of Mr. Crozier's pain medication.**

Mr. Crozier argues that the ALJ erred by failing to mention or account for the adverse side effects he suffered while taking narcotics for his back pain. Although raised in the context of a challenge to the ALJ's RFC analysis, Mr. Crozier's argument also appears to be an attack on the ALJ's step four determination that Mr. Crozier could return to his past work as a production engineer.

There are a number of references throughout the record to the side effects of Mr. Crozier's pain medication. (*See, e.g.*, R. 18, 185, 193.) Mr. Crozier testified at the hearing that he had tried a number of medications prescribed by his doctor, including oxycontin and naproxen, for his back pain. (*Id.* at 18). He testified that outside of ibuprofen, the medications interfered with his job function as they "sedated [him] to the point where [he] couldn't use those during the daytime hours." (*Id.*) Even taking the medication at night caused him to wake up drowsy. (*Id.*) Once he stopped working, which included travelling and walking on concrete floors, he was able to stop taking the narcotics. (*Id.*)

9

The Seventh Circuit has indicated that an ALJ's failure to consider the adverse side effects of a claimant's medication can constitute error. *See Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013) (if the ALJ disbelieved claimant's testimony regarding side effects of medication, ALJ "needed to explain that finding in order to build a logical bridge between the evidence and his conclusion," especially where VE testified that a person whose focus falls below 85% could not maintain competitive employment).

Here, the ALJ found that Mr. Crozier could return to his past skilled work as a production engineer, which necessitated some work at plants walking and standing on concrete floors. Like the VE in *Schomas*, the VE in this case testified that even at skilled work a person who is off task 15-20% of the time and cannot work "harder, faster, smarter at other times" would not be able to maintain employment. (R. 34). Significantly, a finding that Mr. Crozier cannot perform his past work but is limited to light work may result in a finding of disability under the grids. *See* 20 C.F.R. Pt. 404, Appx. 2. In light of these facts, the ALJ's failure to address the evidence in the record regarding the adverse effects of Mr. Crozier's medication was error and must be addressed on remand.

### C. **The court makes no determination regarding the ALJ's failure to mention Mr. Crozier's headaches in his RFC analysis.**

Mr. Crozier devotes a total of four sentences outside of reciting legal principles to his argument that the ALJ erred in failing to mention his headaches in

10

the RFC analysis. As the court has determined that the ALJ committed reversible error regarding Mr. Crozier's RFC and the ALJ's step four determination, the court makes no determination regarding the ALJ's failure to discuss Mr. Crozier's headaches in his RFC analysis. However, the court notes that Mr. Crozier has not identified how or why the ALJ's limitations in the RFC did not sufficiently address his headaches, nor has he offered any additional limitations that should have been included in the RFC.

## **Conclusion**

For the foregoing reasons, the Commissioner's decision that Mr. Crozier was not disabled is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g).

So ORDERED.

Date: 3/13/2018

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email generated by the court's ECF system